Preliminarily, I note that the government is conceding that certain calculations were incorrect. At least that specific issue will have to go back. It depends, Your Honor. It may. I just wanted to get on the table that there is at least that concession to be dealt with. Yes. Exactly. As you wish. Thank you, Your Honors. May it please the Court. The single issue in this case asks whether the lower court, through an order for restitution, entered in Mr. Freeman's case where he pled guilty to obstructing a bankruptcy proceeding by providing falsified documents and testimony, should reward people who lost money and property that they had obtained unlawfully by falsifying documents having absolutely nothing to do with Mr. Freeman's personal bankruptcy. Well, that sure lets you know if you frame the issue, you're all right, I know. Yes. The answer should be a resounding no, Your Honors, for several reasons. First, the people to whom Mr. Freeman was ordered to pay restitution in this case are not in any fashion victims, no matter which statutory language this Court refers to. There is absolutely no connection at all between the offense that committed by and pled guilty to by Mr. Freeman of obstructing the bankruptcy proceeding, his own personal bankruptcy proceeding, by falsifying documents and testifying, lying essentially, to the bankruptcy court. But it seems to me that there certainly arguably is a causal connection because Mr. Freeman's lies prevented these parties from acting as creditors in the bankruptcy proceeding or being able to assign their debts to Mr. Freeman because those assets were not disclosed. So I understand that the district court used, the district court's language appears to connect the wrong to the underlying behavior rather than the offense of conviction. It appears to attribute it to relevant conduct, really, rather than the offense of conviction. But there does appear to be a connecting link between at least two of the victims and the offense of conviction. Well, Your Honor, with all due respect, I would disagree with that. And I thought you might. The reason is there was no debtor-creditor relationship between Mr. Freeman and any of the assigned purported victims in this case. But isn't that precisely the point, that there might otherwise have been? Well, certainly, Your Honor, it seems to me that there was nothing to prevent these purported victims from filing anything in Mr. Freeman's bankruptcy proceedings. And they didn't. In fact, Your Honor, I would point out that it's sort of odd in this case. The bankruptcy proceedings for Mr. Freeman occurred in 2005. And I would point out that the purported victims in this case didn't file anything or any complaint, should I say, about being owed money by Mr. Freeman. For instance, Mr. Waschel declared bankruptcy in 2011, six years later. But the point, though, is that they were prejudiced by Mr. Freeman's misrepresentations, or at least that's the argument. So you were saying that there's no causal connection. No. I was presenting you with one that seems at least plausible. And I realize, with respect to the lost wages, that's an entirely different issue, and we appear to have circuit precedent on that. But at least with respect to the other two victims, you could construct, and what's the standard of review? Well, it's an abuse of discretion. But, Your Honor, what I would suggest, though, again, that there is, again, no debtor-creditor relationship. And I would also point out that you have to remember, this is a personal bankruptcy. There was also, apparently, which is referred to by Mr. Freeman himself in the PSI, that there was also a bankruptcy proceeding for the church. And it is in that bankruptcy proceeding that perhaps these purported victims need to file for some sort of restitution. Well, they were harmed well before the bankruptcy proceeding anyway. And their harm would have... The bankruptcy proceeding didn't change their harm at all, is it? No, but it was... So how could they be victims of the bankruptcy proceeding? Well, Your Honor, again, that goes back to really my very... Victims of a scheme or a fraud or a conspiracy that the government never charged. Correct. Or sought to put in their plea agreement. Precisely, Your Honor. And so, any bankruptcy proceeding, in particular, in this one, though, which is the personal bankruptcy, there is no connection between that proceeding and Mr. Freeman... I'm sorry, Your Honor. No, no, finish. I'm listening. I'm going to have to ask you to clarify something, but please finish. Oh, certainly. Thank you. Again, what I was saying is there's no connection between the lies Mr. Freeman told to the bankruptcy court and the losses, if you will, that were suffered. And I'm not even sure that there were losses suffered in this case. And what I point to in support of that is that these people do not come before the court with clean hands at all. The victims, purported victims in this case, the Clouds, for instance, and this gets back to Judge Duncan, your original suggestion that this is being remanded and perhaps it doesn't need to be discussed here. I want to make sure you explain this clean hands because I think there's something to this, but I want to make sure I'm on the same page you are. Yes, Your Honor. Because I understand they had this property and it's involved in these various ways to go out and take out loans. What's some of the property? Are we talking about the car and the... Now, how is that titled? Yes, Your Honor. It was signed by the purported victims who falsified their income amounts. Were they using the property? They used the property. Incriminately? Apparently, all members of the church used these cars, which were very lavish cars, BMWs, Mercedes-Benz, a Lincoln Navigator, a Cadillac Escalade. For instance, Your Honor, and I would point to the record at page 163. What would be the crime is what I'm trying to understand. You said they didn't come in clean hands, but if someone goes and take out a loan for a church group and to purchase a car, and then everybody uses the car, including the person who took it out, what's... The crime here, Your Honor, is that they falsified the loan documents. They put in the documents that they earned more income than they actually did. They lied. But I'm talking about in terms of the so-called victims. What's the crime against them? They are involved in this. There is none. To me, Your Honor, these are, again, purported victims have unclean hands because they enjoyed the fruits of what they were able to purchase after lying to the lender on their loan applications. So they're the ones that lied to the lender? Yes. Okay. Yes. And... Sorry, Your Honor. The government... Now... Doesn't the district court find some things as fact about the relationship or what caused the nominees to behave in the manner that they did? Well, I think what the... I'm trying... Yes. It's the record. And I'm sort of trying to get back to the record and the standard of review. Mm-hmm. And it still isn't clear to me that the nominees couldn't have acted as creditors in the bankruptcy proceeding as people to whom Mr. Freeman might have owed money. Your Honor, I would respectfully disagree with that. And for this reason, that... And what the district court judge stated in this case, and is precisely what the prosecutor argued, is that Mr. Freeman caused, is the word that was used, or convinced these purported victims to then go seek these loans so that they could then make these lavish purchases and allow every member of the church, including Mr. Freeman, to use that. And how... I mean, I really don't like to say this, but, you know... But you're going to. I'm going to. You know, unless Mr. Freeman held a gun to their head, which there's no evidence of that... You said they were complicit. Yes. And the consequence of that, for our purposes analytically, is what? Is they're not victims. They are not victims to whom restitution is owed. They are not victims for several reasons. First of all, even if you look at the statute that requires it, that says if we agree that this is a condition of supervised release, what that statute requires is that the restitution be made to the victim of the offense. The offense involved here is lying to the bankruptcy court. They are not victims of that offense. What is the input of this being a church? You say that a minister or someone is coercing someone to take out loans. Well, I didn't say coerce, Your Honor. I mean, if that is even an allegation or whatever, that he's short of putting a gun to their head. He's not doing that. But that's the basis of it. I just don't know where that goes. I mean, why wouldn't that apply to people who make contributions to the church or anything else that can come? I mean, by nature, a church is asking for money and asking, and there's other considerations here, like God, in terms of why you would give and that people should give. I just don't know where this goes. I've tried to get my mind around this whole business that these people who have, at the direction of the minister, taken out loans and whatever basis, and then somehow it ties into the church and the church doesn't pay at all, then therefore they are victims. I agree, Your Honor. I don't see how there's any connection. I just don't see how these are victims. And I don't know what happens if they were to, let's say, they felt like they needed to make a huge contribution to the church and went out and took a $100,000 loan out on the house themselves without anybody asking them because the church needed $100,000, and it doesn't get paid, and I still don't get it. I agree, Your Honor. I think actually, which sort of sums up what the government thought about what took place here, is at page 84, which is the government's memorandum in aid of sentencing, where they said the defendant caused his congregants to purchase luxury automobiles and a mansion for the defendant's own use without saying that everybody used those, and that's supported by the record. And during the purchasing process, the defendant caused his congregants to sign paperwork that misrepresented their incomes, and then the defendant assumed control of the vehicles and the mansion, which is not supported by the record. I suppose he could have said you can shoot someone, and he could say the defendant caused him to shoot someone. Well, short of aiding and abetting, I don't understand how in any fashion. It still would make the person who did the action culpable for what they did. Correct. I think also that this was, at one point the prosecutor also said that this was a mistake made by the congregants who mistakenly believed that the vehicles would be paid for by the church. But that's their mistake. And you have some time for rebuttal. Thank you, Your Honor. Thank you very much. Thank you. Mr. Windham? Yes, ma'am. Can I start with one thing that it seems to me pretty clear, that we don't allow restitution for lost income? I believe that the Forsyth case, United States v. That's kind of, I mean, can we sort of agree on that? I believe that that case is distinguishable from the present case. You don't agree on that? No, ma'am. And I'll take that up first, then. I'm sorry. No, you can proceed in any order you wish. I was just trying to see if we could. Sure. Well, since we're there, I guess I'll begin by saying may it please the Court. Why don't you just begin to make them a victim first? I mean, to deal with it. Of the offense. Yes. The individual is here, and it seems we're using their last name, so I will. But the individuals here for whom the government has not conceded error are Mr. Dixon and Mr. Washoe. And here, those two people are the victims of the offense for the following reasons. The defendant, Mr. Freeman, lied about his assets and his liabilities to the bankruptcy court. As a result of those lies, he received a discharge. He specifically lied about ownership or control over assets, including ones owned for his benefit by the victim nominees. So thereafter, there was a- Was that lie the basis for getting the loan? The lie was the basis for the discharge. Of the bankruptcy? Correct, yes, Your Honor. For which these folks didn't have any dog in that fight, because they didn't come in as people who had been wronged or credited. I disagree with that, Your Honor. These people should have had a dog in that fight. Could have, could have, but they didn't. And again, Your Honor, I disagree with that. It was prevented from thereafter seeking any recovery from Mr. Freeman, regardless of whether they would have received it, because Mr. Freeman received the discharge. Correct. There was a loss that was realized after the lies. However, the loss had accrued beforehand. In this case, in the 2005 bankruptcy of Mr. Freeman, these individuals should have been able to- should have been listed as creditors and should have been able to file claims in Mr. Freeman's bankruptcy. And in fact, just to clarify the record, I went back and looked at the bankruptcy docket. Mr. Cloud did file a claim not for- excuse me, Mr. Cloud was listed as a creditor, and he did receive notice of the bankruptcy filing. For certain other loans, not these, but the other two individuals for whom this court is presently taking up the issue, Mr. Dixon and Mr. Waschel, were not listed as creditors in either the original bankruptcy filing or the amended schedules that the defendant turned in to the- signed and filed with the bankruptcy court. Therefore, they were not given notice, even, of the defendant's bankruptcy. The reason- the difficulty I'm having conceptually, it does appear to me that it doesn't matter whether or not these individuals would have succeeded in bringing a claim against Mr. Freeman. The point is, they were precluded from doing so, or at least arguably precluded from doing so, by the discharge which he obtained by lying. Correct. But there was a lot of confusion. I mean, there's confusion in the way it's charged. There's confusion in the way the district court- the district court even seemed to be basing the restitution order on relevant conduct and not the offensive conviction. I think, Your Honor, that I- that's not entirely accurate. The district court relied on various information at its disposal, including the victim impact statements, in order to award- excuse me, in order to order restitution as a condition of supervised release here. So I don't think it's necessarily fair to say that the district court was relying on relevant conduct. I think what the district court was doing was relying on the actual loss that was suffered by these victims because they were unable to look for recompense to the defendant because of the bankruptcy discharge that had occurred years earlier. And as I stated, there's nothing in the bankruptcy docket records to indicate that the two victims that are under discussion here were even notified of that bankruptcy. These alleged victims are so attenuated from the offensive conviction that the government did not consider them victims until nearly the day of sentencing. Isn't that correct? No, Your Honor, it's not. I think- So when the probation- when the PSR says that the government said there was no restitution in this case and that there are no victims, that's not accurate? It is accurate that the PSR said that. And I think it's useful to give a 30-second recap of the timeline here. The guilty plea was in 2011, the summer of 2011. Which also did not include a paragraph regarding restitution to victims, correct? The guilty plea. Not a specific paragraph. There was a general paragraph regarding that the court could order restitution lawfully, but not specific for these victims. But the guilty plea was in the summer of 2011. The PSR came out shortly thereafter. In the PSR, the probation officer found that the defendant had the ability to pay a fine, had over $3,200 in monthly cash flow. And I think that the district court said this best, and this is at page 208 of the joint appendix, The defendant suggests to me that the probation officer does not recommend an order of restitution. That is not what the pre-sentence report says. It says the government provided no information on it. The government, upon further reflection of this and having benefit of the pre-sentence report that shows the financial ability of the defendant to pay something, has come forward and given me information concerning the victims. And then over a month prior to the sentencing hearing, the government submitted the victim impact statements in June of 2012. The issue thereafter was fully briefed and fully argued, fully briefed before the sentencing hearing, fully argued at the sentencing hearing. And so I saw some argument, especially in the reply brief, to the extent that this was somehow foisted upon the court at the last moment. It was not. It was fully briefed, fully briefed beforehand. Now, Your Honor, Judge Winn, there were some questions regarding whether or not these individuals were victims. And I saw in the briefs and then again at argument here today, defense counsel has argued that these individuals are co-conspirators. But I would again point, Your Honors, to the record. The district court specifically found that these people were unwitting victims. This is the statement of the district court. Which steps or basis are you relying on? The government is relying on the supervised release statute, Section 3583 of Title 18. Is that the sole basis you are relying on? No, Your Honor, because we believe, well, it is clear, yes, Your Honor, that the district court did award the restitution under 3583. So I would say that that is the statute under which restitution was ordered, and that is how it must be defended. The only difference, well, I guess the only- This was imposed before or after the sentence had been given? This was imposed orally in court on the day of sentencing. This was imposed in the written judgment. And the district court's comments, and this is in the record, could not be more clear that this was being imposed, this restitution was being imposed as a condition of supervised release. And then this was further confirmed in the written judgment, in which under the page heading additional terms of supervised release, this restitution order was entered. Were there victim impact statements? There were, Your Honor. These were submitted and- Are they in the record? They're in the record.  They are in the record. And the district court cited to them on many different occasions throughout the sentencing hearing, which- When? Are those the ones that were submitted the day of sentencing or sometime before? They were submitted, I believe, June 26th is the date. That comes from my files, which the district court should have in its records, but the district court did repeatedly say that it had the victim impact statements. Good note. You were getting ready to say that the district court found that they were victims, and you were getting ready to give us a record cite, and it was also my recollection that the district court found as a fact that they were victims. Is that correct? Yes, Your Honor. The district court found that these were unwitting individuals. Well, I want to know when the district court found that they were victims, is it of the fraud or the offense of conviction? Did the district court find as a fact that they were victims of the offense of conviction? I don't think that in the record the district court says whether, specifically in the sentence, whether it was a victim of the offense or a victim of the relevant conduct. So what we have then is the district court's finding that the requested restitution reflects the damages caused to victims of the defendant's crime, about which he lied to the district court. And that's the basis of my concern that what the district court was focusing on was the relevant conduct and not the offense of conviction. I don't think, Your Honor, that I understand that there's language in the record from the district court where he talks about the, where Judge Titus talks about the period of loose money and lending, but I don't believe that that is the basis for the award here. The basis appears to be just simply from the district court's statements at sentencing, the offense of conviction, and that is the basis under which the government is defending the award. Could you please, is there anything specific that comes to mind, and I will go back through the record as well, in which the district court tied the restitution to the offense of conviction? And if you don't recall, that's fine, but that was really what I was looking for. I would say not to my recollection that the district court said, however it was argued in the government's brief that was filed two weeks prior to sentencing. I'm sorry. Thank you very much. But you do acknowledge that the restitution, even if it's ordered as a condition of supervise, released a steel limit to loss that would be sustained as a result of the offense of conviction? Yes. And the offense of conviction here is having lied in a bankruptcy proceeding. So how do you connect that to financial loss that is later sustained by the members? Yes, and just to clarify, Your Honor, the government is only arguing that the basis of the restitution award was based on the offense of conviction, not on the relevant conduct. Here, after the bankruptcy discharge, which was predicated on the defendant's false statements and obstruction of the bankruptcy proceedings, the nominee victims suffered harm when their debts came due. Before you proceed, I just want to be sure I understand. What if he told the truth in the bankruptcy proceeding? Would they have still lost that? There wouldn't have been any offense of conviction. I understand that, but I want to know the difference between him lying, I'm looking at a cause of connection, whether he's convicted or not, whether it's a crime. If he's lying, you say it caused the loss. What if he told the truth? Do they still lose? Do the victims still lose the money? Do they still lose the property? Obviously not as a basis of that offense of conviction. They still might lose because there would be no offense of conviction. What would be the difference? My point is they already were going to lose their property, right? The lying in the bankruptcy proceeding about his assets or whatever did not affect the loss to these individuals. I want to make sure I understand. Clarify that. Get me straight on this. Because as I understand, you're saying that the loss, at least the lying in the proceeding, there's a cause of connection to their loss. So if he had told the truth, wouldn't they have still lost their property? Your Honor, the victims would have been able to look to the bankruptcy. Well, they might have been able to recover back. Correct. It's only the possibility. Which is all that's necessary here. They incurred their loss based on their mistaken belief in him, their coercion by him. That's where they incurred their loss, through a scheme to defraud by him. That had already occurred and that the government did not choose to indict him on or to get him to plead guilty to. To go to Judge Wynn's question, yes, they would have still suffered that loss regardless of the offense of conviction. It had already occurred. Based on even what the government argues in its brief and what the court found, their mistaken belief in him, well prior to the bankruptcy proceeding. The bankruptcy proceeding may have exacerbated it, but that doesn't help. I would say, Your Honor, that the debt accrued prior to the bankruptcy proceeding, but the loss itself was not realized until years later. And so in this case, the nominee victims were unable to look for the recompense to the defendant who had a bankruptcy discharge order in place. That would have come from the bankruptcy proceeding. Correct. So what would you get from the bank? Are they entitled to everything or are they entitled to get out of a bankruptcy proceeding? They're entitled to restitution for the loss that they suffered at the hands of the defendant. If he told the truth, what would they get? Would he get out of the bankruptcy proceeding, right? If he had told the truth of the bankruptcy proceeding. There's no lie. I'm just carrying this forward, Your Honor. The individuals, I guess, would have been listed as creditors, would have been notified of the bankruptcy proceeding, would have been able to submit a claim. I guess it would be a claim based on contingent loss because the loss hadn't been real. If he prevented them from listing themselves as creditors in that proceeding, you're only saying that the fact that he told this lie in terms of his assets, they were discouraged or felt like there was no need. Is that right? I don't think that they were. There's nothing in the record to indicate that they were notified, except for Mr. Cloud, of the bankruptcy proceeding at all. There was no. These were not listed as creditors. They were not notified by the clerk of the bankruptcy court. So there's nothing in the record to indicate that these two victims. How are they creditors? Because they took out loans, particularly for these individuals, for cars and for residences, at the behest of the defendant. And, in fact, according to one of the victim impact statements. How was the property titled? The property was titled in the names of the nominee victims. That's why the government calls them that. They're nominee victims. The defendant, according to the district court, preyed on these unwitting victims. One of the victim impact statements says Mr. Cloud says he was coerced. Another individual, I believe it's Mr. Dixon, says that he took out the loan under false pretenses. He took out the loan for what purpose, according to Dr. Shine? According to Dr. Shine, it was to help the underprivileged and to spread the gospel. And that comes from a victim impact statement from Mr. Dixon. Was that a lie? Was that a lie to the victim? Was that found to be a lie? The district court, Your Honor, determined that all of this physical property, the cars and the house, was taken out of the behest of and for the benefit of the defendant, not to spread the gospel. It didn't help any of the underprivileged? It didn't help any drug addicts? Even though the record seems to indicate Dr. Shine may have been a shyster in many ways, but it looks like there's a lot of evidence that there were a lot of people helped in this situation. He was a former drug addict himself, and all of this so-called community property, looks like to me everybody was using it. I think that there's only one piece of record evidence on that, and that's with respect to the $1.75 million mansion, about everybody using it. There's some other evidence that the cars were being passed around as part of a progression. But there are other residences that were purchased by the victims here that do not appear, based on my understanding, in the record of the sentencing. But, Your Honor, I would— How do we escape this? The point that seems to be bothering me more about this is the church aspect of what's going on here. This kind of rationale could apply to a lot of situations when a church is involved, when individuals at the behest of a minister or a pastor go out and take out loans, and whether the loans are used for the specific purposes of the mission of the church or what the pastor determines to be and could be his own abundant life he's trying to promote, which he seems to be here. How do you draw that distinction? Here the victims were specifically told that the defendant would take care of the debts, would take care of the payments on the debts. The defendant or the church? There's record evidence for both. The victims say the defendant. There's record evidence that it is also the church. The evidence is, was there any evidence that he never paid any of the debts or that no effort was made to pay the debts? There's evidence that the debts weren't paid because these particular individuals had to enter bankruptcy when they were not able to pay the debts, make payments on the debts. Wasn't it overextended? They just got in so deep into this thing they couldn't pay it. They could not pay even their— because of the collective amount of debt that they had that they took out at the behest of the defendant, they could not pay them, and that is why they suffered the losses of their actual property that they previously had owned, including the residences. I see I have just two minutes. If I could just— Let me ask one last question on these two individuals. Could they take out a civil action? If it were not time barred, they might be able to. The other option was to attempt to reopen the bankruptcy, which the government noted in its papers. Could they have taken out a civil action? Was there an instance in which they could have pursued this civilly outside of the bankruptcy? I hesitate to say precisely, Your Honor. I simply have not looked at that. There's nothing to indicate that they tried to, aside from having filed claims in the Church's bankruptcy. At that point— The only way they can get that money without having to actually pursue it in court, as most folks would have to do, they can seek restitution when there's one crime that ties them to a bankruptcy proceeding which the one thing the defendant has pled guilty to is that he lied in the bankruptcy proceeding about his assets. I think, Your Honor, that this is an entirely appropriate method by which to recover one's losses. That's the point of restitution is to be put back in the same position, regardless as to whether there's—  Correct, and that brings me to my final 40-second point, Your Honor. It is not just that these individuals are, under Section 3663, Sub 8-2, the VWPA, victims directly and proximately harmed by the defendant's conduct, but also under Ocean Pro, which was last year's case, and Judge Duncan, you sat on the panel on that, and it was decided in 2012. That case looks at the plain language of Section 3583, the supervised release statute by operation of the probation statute, and finds that the definition of victim is even broader, and the only possible meaning of that, assuming that relevant conduct cannot be the basis of restitution, is that they are indirectly harmed by the defendant's conduct. Thank you, Your Honor. Does Ocean Pro say indirectly harmed is sufficient? I'm sorry, Your Honor? Does Ocean Pro say that indirect harm is sufficient? May I respond? Oh, please. Yes, I'm sorry. Ocean Pro says only that the definition in the supervised release statute is broader. I listened to the arguments. There is no indication that there was substantial argument on this point, but the only way to give that meaning within the confines of the Supreme Court's decision in Huey in 1990 is to say that it strikes 3663A2, strikes the limitations of that subsection, which say that otherwise the victim has to be directly and approximately harmed. Thank you. Ms. Forster, you have some time for rebuttal? Thank you, Your Honor. In response to a few questions, Judge Duncan, you had originally asked whether or not the district court judge, his findings were based on the underlying conduct, and I would point to the record at page 209 where the court talks all about loose money lending practices. Yes, I'm aware of that. Okay. And that was why I was asking. I was aware of that. I was wondering, was there anything that tied it to the offensive conviction as opposed to the relevant conduct? No, because what I was going to say is at the end of that paragraph, that page, what the judge says is it was lying about that conduct to the bank, correct. Okay. Thank you. Yes. And as for what these were not unwitting victims, although the government keeps saying that they were, and in fact- Does that matter? Well, Your Honor- Does that matter for the- Yes. If the district court found that they, I think it's a fact that they were, and it doesn't seem to me it would make any difference for purposes of whether or not they're victims of the offensive conviction. It does to this extent, Your Honor, which is one of the other bases why I think that restitution is not appropriate in this case, is that is because it would be contrary to public policy. But wouldn't we have to find that the district court clearly erred in finding that they were? Yes. Yes. And I think that the record supports such finding. Okay. In fact, it was the prosecutor herself in questioning the witnesses for the defense who brought out the fact that essentially everybody knew that the amount of income they were putting on these loan applications was false. That's at the record at page 170 and 171 and at page 167. So it seems to me that it would be clearly erroneous to then say that these are unwitting victims when what they are doing they know is defrauding the lenders. And so to that extent, it does make it contrary to public policy to say that those types of people should be rewarded for their willing complicity in defrauding lenders. That's essentially what this court would be doing. And I cited in my briefs the Ninth Circuit and Second Circuit cases, which say that the court should not be involved in rewarding people for their own fraud through restitution orders. And lastly, the last point I'd like to make is that also there really is, and this goes as to Judge Thacker's questions regarding the actual date on which all this information became known to the defense. The problem here is even if you look at this case under the supervised release statute conditions, what that still requires is proper procedures where the probation officer is supposed to do a complete accounting of the losses by the victims, talk to the victims, get affidavits from the victims, and none of that happened here. None of that. The only way we know about these numbers is because the prosecutor wrote them down on her request for restitution. And apparently the complete accounting is still ongoing based on the government's 28J letter. Correct. Thank you, Your Honors. Thank you. Ms. Forster, we note that you are court appointed. We commend you for your able job and thank you for your service to the court. Thank you, Your Honor. We will come down in group counsel and proceed directly to the last case.
judges: Allyson K. Duncan, James A. Wynn, Jr., Stephanie D. Thacker